UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARBRE FARMS CORPORATION,

    Plaintiff,

v.

GREAT AMERICAN E&S INSURANCE, et al.,

    Defendants.
_____/

Case No. 1:20-cv-551

Honorable Hala Y. Jarbou

# OPINION

This is a contract dispute. Plaintiff Arbre Farms Corporation claims that Defendant Great American E&S Insurance must pay out the insurance policy it issued. (Compl., ECF No. 1.) Defendants Berkley Assurance Company and Starr Surplus Lines Insurance Company each issued excess insurance policies covering losses by Arbre Farms exceeding its policy with Great American. Great American moved to dismiss for failure to state a claim, arguing that two provisions in the insurance contract excluded Arbre Farms' claim for losses. (ECF No. 14.) Berkley and Starr joined that motion to dismiss, each arguing that the excess insurance policies are subject to the same exclusions as Great American's policy. (ECF Nos. 17, 18.) Arbre Farms opposed Great American's motion to dismiss (ECF No. 30) and objected to Berkley's and Starr's respective joinder of the motion (ECF Nos. 31, 32). The motion to dismiss will be granted and Arbre Farms' objections will be denied.

## I. Jurisdiction and Choice of Law

Arbre Farms' complaint brings four causes of action, all rooted in state law. Federal courts may exercise diversity jurisdiction over state law claims if the amount in controversy exceeds

$75,000 and no plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332. Arbre Farms claims that each Defendant owes $5,000,000 under their respective insurance policies. (Compl., PageID.5, PageID.8.) Arbre Farms is incorporated in Michigan, which is also its principal place of business. (*Id.*, PageID.2.) Great American is a Delaware corporation with its principal place of business in Ohio. (*Id.*) Berkley is an Iowa corporation with its principal place of business in Arizona. (*Id.*) Starr is incorporated in Texas and its principal place of business is in New York. (*Id.*) The Court has jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000 with respect to each Defendant.

The policy between Arbre Farms and Great American contains a New York choice of law provision. (Def.'s Mot. to Dismiss, PageID.110 n.21.) However, "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there is actually a difference between the relevant laws of the different states.'" *In re Trade Partners, Inc. Invs. Litig.*, No. 1846, 2008 WL 2757835, at *5 (W.D. Mich. July 11, 2008) (quoting *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992)). The parties agree that "there is no relevant distinction between New York and Michigan law" with respect to the matter at hand. (*Id.*; Pl.'s Br., ECF No. 30, PageID.347 n.11.) Hence, where relevant, reference will be made to Michigan law rather than New York law.

## II. Background

Arbre Farms produces a variety of locally grown vegetables for sale to food manufacturers and distributors. (Compl., PageID.3.) The company takes out insurance policies to cover losses that might result from a recall of contaminated products. Relevant here is an insurance policy between Arbre Farms and Great American that would, among other things, cover certain recall-related losses incurred from October 1, 2018, to October 1, 2019. (*Id.*, PageID.4-5.) The Great American policy would cover losses up to $5 million. (*Id.*, PageID.5.) Arbre Farms also secured

2

excess recall insurance from Berkley and Starr, who each promised to cover up to $5 million in losses if the company suffered losses exceeding the $5 million coverage of the Great American policy. (*Id.*, PageID.8.)

Green beans are one vegetable sold by Arbre Farms. Arbre Farms tests its green beans for listeria monocytogenes ("LM"), bacteria that can be deadly to humans. Some sample size of a batch of beans are tested for LM. If LM is detected in that sample, the entire batch is either quarantined or destroyed.

The allegedly insured event occurred in January 2019. (*Id.*, PageID.3-4.) According to Arbre Farms, a batch of green beans tested positive for LM in September 2017 and was subsequently quarantined. (Pl.'s Br., PageID.329.) Somehow a portion of that LM-infested batch was intermixed with fresh, non-contaminated beans and sent out to a customer. (*Id.*) Arbre Farms says it discovered the mistake in January 2019. (*Id.*) Government investigators got involved and forced the recall of 80 million pounds of products. (Compl., Page ID.4.) The recall was eventually scaled back, but Arbre Farms was ultimately forced to destroy eight million pounds of products – a loss that allegedly exceeded the value of the combined $15 million of insurance it secured from Defendants.

Arbre Farms filed a claim with Great American seeking payout from its insurance policy. (*See id.* at PageID.8.) In January 2020, Great American denied coverage. (*Id.*) Berkley and Starr did not take a position on coverage under their respective policies, as those policies would not be triggered until the $5 million coverage from Great American's policy had been exhausted. (*Id.*, PageID.8, 10.) Great American declined to recant its denial and Arbre Farms sued.

3

### III. Standards

#### A. Motion to Dismiss for Failure to State a Claim

When considering a motion to dismiss brought under Rule 12(b)(6), courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a motion to dismiss, courts must accept factual allegations as true, but will reject conclusory statements as "not entitled to the assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 555-56). Hence, courts will ignore conclusory assertions and, accepting well-pleaded factual allegations as true, determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* Determining the plausibility of a claim is a "context-specific" inquiry, "requiring the reviewing court to draw on its experience and common sense." *Id.* If the Court decides that there is no plausible claim to relief, then it will grant the motion to dismiss.

#### B. Construing Insurance Contracts

Insurance policies must be construed "in the same manner as any other species of contract, giving its terms their 'ordinary and plain meaning if such would be apparent to a reader of the instrument.'" *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012)

4

(quoting *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003)).  When the meaning of certain language in the contract is disputed, courts must determine whether that language is ambiguous or unambiguous.  *Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. Ct. App. 1983).  Contractual language is ambiguous "only if it is equally susceptible to more than a single meaning."  *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017).  Where ambiguity exists, "factual development is necessary to determine the intent of the parties."  *Petovello v. Murray*, 362 N.W.2d 857, 858 (Mich. Ct. App. 1984).  "However, 'ambiguity is a finding of last resort."  *Kendzierski v. Macomb Cnty.*, 931 N.W.2d 604, 612 (Mich. 2019) (quoting *Mayor of the City of Lansing v. Pub. Serv. Comm.*, 680 N.W.2d 840, 846 n.6 (Mich. 2004)).  Where the meaning is unambiguous, courts must enforce the contract as written without consideration of extrinsic evidence.  *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 398 n.6 (Mich. 1991).

Provisions in insurance contracts limiting the scope of coverage are valid "as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy."  *Trierweiler v. Frankenmuth Mut. Ins. Co.*, 550 N.W.2d 577, 579 (Mich. Ct. App. 1996) (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502 (Mich. 1995)).  "An insurance company should not be held liable for a risk it did not assume."  *Id.* (citing *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992)).  Exclusionary clauses are "strictly construed in favor of the insured," but "coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claim."  *Id.*

The insured bears the burden of proving that the policy covers the claimed losses.  *Williams v. Detroit Fire & Marine Ins. Co.*, 27 N.W. 452, 453 (Mich. 1937).  The insurer, on the other hand,

carries the burden of proving that a policy exclusion precludes coverage of an otherwise covered loss. *Heniser*, 534 N.W.2d at 505 n.6.

### IV. Analysis

#### A. Exhibits

Great American attached many exhibits to its motion to dismiss. Arbre Farms' opposition brief spends a good deal of time arguing that the Court may only consider two of those exhibits, one of which is the Great American insurance contract itself. The Court will not address this issue because it need only examine the insurance contract to determine that Great American properly refused to pay Arbre Farms' claim. The Court may properly consider the Great American, Berkley, and Starr contracts because each were attached to Arbre Farms' complaint and the contracts are central to Arbre Farms' claims. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

#### B. Great American's Insurance Contract

Great American gives two independent grounds for refusing to pay Arbre Farms' claim. It argues that Arbre Farms was not the first to discover that the allegedly insured event had occurred, which precludes coverage under the policy. Second, Great American argues that an exclusion clause in the contract negates policy coverage. Arbre Farms claims that it did first discover the contamination, but neither addresses the applicability of the exclusion clause nor disputes its meaning. Because the Court finds that the exclusion clause is applicable, negating coverage, the Court will not take up the question of first discovery.

In the contract at issue, Great American promised to cover certain losses, including losses associated with "recall costs," that result from an "insured event." (Great American Policy, ECF No. 14-11, PageID.264.) The definition of "insured event" includes "[a]ny accidental or unintentional contamination, adulteration, or mislabeling of an INSURED PRODUCT(S) that occurs during or as a result of the production, preparation, processing, manufacturing, packaging,

6

or distribution of the INSURED PRODUCT(S)." (*Id.*)  Hence, on first impression, it appears that the event at issue constitutes a covered insured event: during the covered period, a batch of green beans was accidentally contaminated with LM and Arbre Farms incurred losses resulting from a recall.

But coverage is excluded here.  The Exclusions section states that the "Policy does not apply to any LOSS, damage, claim, cost or expense of any nature whatsoever, caused by, arising from, or attributable to any" listed exclusions.  (*Id.*, PageID.268.)  Exclusion G states that the policy does not cover "[a]n INSURED EVENT *or any circumstance that could rise to an INSURED EVENT* that is discovered, known by or should reasonably have been known by [Arbre Farms] prior to the inception of the Policy Period." (*Id.* (emphasis added).)  LM-contaminated green beans in quarantine are a "circumstance that could give rise to an insured event."  The green beans at issue were contaminated and quarantined in September 2017, well before the policy incepted in October 2018.  The term "circumstance" may be broad but it is not ambiguous, and the clause as a whole clearly applies to the situation at issue.[1]  Arbre Farms stores contaminated products separate from its other products.  This creates an ongoing risk that, as happened here, quarantined products will somehow get mixed in with uncontaminated goods.  The quarantined green beans were a pre-policy circumstance that could give rise to an insured event.  And Arbre Farms clearly knew of the existence of the quarantined green beans and the risk of cross-contamination.  This is not a risk for which Great American assumed liability, and so it will not be held liable.

---

[1] The Court again notes that Arbre Farms does not address the meaning of Exclusion G or its applicability here.

Though Arbre Farms does not address Great American's arguments regarding the applicability of Exclusion G, it makes a series of contentions that might have some bearing here but are ultimately irrelevant. Arbre Farms argues that the contamination of the green beans in 2017 was not itself an insured event.[2] That is true. It further argues that the policy appears to cover products that predate inception. Also true. But Arbre Farms is not asking for compensation for the contaminated green beans. It is asking for reimbursement of its recall-based losses after the 2017 LM-contaminated green beans were mixed with uncontaminated products and shipped to a customer. None of Arbre Farms' arguments defeat the contention that the quarantined green beans constituted a pre-policy circumstance that could give rise to an insured event. Great American does not have to pay Arbre Farms.

**C. Berkley's and Starr's Contracts**

Both Berkley and Starr contend that their respective policies "follow[] form" to Great American's policy. (ECF Nos. 17, 18.) That is, if a claim is excluded under Great American's policy, then it is also excluded under Berkley's and Starr's policies. (*See* Berkley Policy, ECF No. 1-2 (coverage under Berkley policy subject to "terms, definitions, limits, conditions, exclusions and endorsements" of Great American policy); Starr Policy, ECF No. 1-3 (same).) Because Exclusion G negates coverage under Great American's policy, that same exclusion also negates coverage under Berkely's and Starr's respective policies. Arbre Farms' objections to Berkley's and Starr's joinder of Great American's motion to dismiss will therefore be denied.

**D. Dismissal Is With Prejudice**

In a footnote, Arbre Farms requests dismissal without prejudice and leave to amend the complaint if the Court concludes that Great American's motion should be granted. (Pl.'s Opp.

---

[2] If the insured event occurred prior to the policy's inception, then the event would not be covered by the policy.

PageID.355 n.14.) Courts "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, parties should not be given leave to amend where amendment would be futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Futility exists where the proposed amendments would not save a complaint from dismissal. *See id.* ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.") (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

Though Arbre Farms has not proposed any amendments, the Court does not see how the deficiencies in the complaint could be cured here. The issue here is not insufficient factual pleading. Dismissal is warranted because the events as described by Arbre Farms simply do not qualify for coverage under the insurance policies it holds. Given that the risk of cross-contamination was a circumstance predating the policy inception that could give rise to an insured event, Exclusion G inescapably applies. Arbre Farms cannot save its complaint from dismissal. Amendment would be futile and the complaint must be dismissed with prejudice.

## V.  Conclusion

For the reasons stated, Great American's motion to dismiss (ECF No. 14) will be granted. Arbre Farms' objections to Berkley's and Starr's joinder of that motion (ECF Nos. 31, 32) will be denied. Arbre Farms' complaint will be dismissed with prejudice. An order and judgment will enter in accordance with this Opinion.

Dated:   January 11, 2021                              /s/ Hala Y. Jarbou
                                                               HALA Y. JARBOU
                                                               UNITED STATES DISTRICT JUDGE